ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
RUSSELL W. CHITTENDEN
Assistant United States Attorney
California State Bar No. 112613
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2444
Facsimile: (213) 894-7819
Email: russell.chittenden@usdoj.gov

Attorneys for Federal Defendants
Timothy F. Geithner, United States
Secretary of the Treasury and
The Federal Housing Finance Agency

FILED
CLERK U.S. DISTRICT COURT
APR - 5 2012
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARSHALL DENNIS SILVERS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, a national bank chartered by the Office of the Comptroller of the Currency and a member of the Federal Reserve System and the Federal Deposit Corporation; HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR PHH 2007-1, a securitized trust connected with the issuance of mortgage backed securities; PHH MORTGAGE CORPORATION, corporation licensed by the California Department of Corporations under the California Residential Mortgage Lending Act, individually and as attorney-in-fact for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1; NDEX WEST, L.L.C., a limited liability corporation doing business in the State of California; MORTGAGE | NO. CV12-02986 PA (JEMx)<br><br>NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT BY FEDERAL DEFENDANTS<br><br>[28 U.S.C. § 1442] |

ELECTRONIC REGISTRATION SYSTEMS, INC., A Delaware corporation, individually and as nominee for UNITED PACIFIC MORTGAGE, a California General Partnership; UNITED PACIFIC MORTGAGE, a California General Partnership; LSI, an unknown entity, identified as Trustee under the Deed of Trust recorded in Official Records of the Los Angeles County Recorder's Office as Document No. 06-2354885; TIMOTHY F. GEITHNER, as United States Secretary of the Treasury; THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association; and DOES 1 through 50, inclusive,

Defendants.

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

Pursuant to the provisions of 28 U.S.C. § 1442, federal defendants Timothy F. Geithner, United States Secretary of the Treasury and the Federal Housing Finance Agency (collectively the "federal defendants") hereby remove the above-entitled action from the Superior Court of the State of California for the County of Los Angeles to this Honorable Court. The grounds for the removal are as follows:

1. On or about August 10, 2011, plaintiff Marshall Dennis Silvers ("plaintiff") filed a Complaint in the Superior Court of the State of California for the County of Los Angeles, Case No. LC094569. The federal defendants are among the named defendants.

2. The first date that the federal defendants, or either of them, received a summons and the Complaint was on or after March 7, 2012.

3. Copies of all process, pleadings, and other documents received by the federal defendants in this action are attached hereto as Exhibit "A."

4. The above-described action is one which may be removed to this Court pursuant to 28 U.S.C. § 1442(a)(1) because the federal defendants are officers and agencies of the United States within the meaning 28 U.S.C. §

1442(a)(1) which were, at all times material to the complaint herein, acting under the color of their office and agency. Such removal is a matter of right for the federal officer or agency which has been sued. Willingham v. Morgan, 395 U.S. 402, 406, 90 S.Ct. 1813, 1815, 23 L.Ed.2d 396, 401 (1969). Removal by the federal defendants is effective as to the entire action, including the non-federal portions of the case. Murphy v. Kodz, 351 F.2d 163, 167 (9th Cir. 1965). A federal defense to this action exists in that, inter alia, the federal defendants are protected under the principle of sovereign immunity from this action.

DATED: April 5, 2012

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

RUSSELL W. CHITTENDEN
Assistant United States Attorney

Attorneys for Federal Defendants
Timothy F. Geithner, United States
Secretary of the Treasury and
The Federal Housing Finance Agency

Timothy

B-1

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ORIGINAL FILED
Northwest District
AUG 16 2011
LOS ANGELES
SUPERIOR COURT

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):** see SUMMONS Attachment

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** MARSHALL DENNIS SILVERS

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: SUPERIOR COURT OF CALIFORNIA
*(El nombre y dirección de la corte es):* COUNTY OF LOS ANGELES
6230 Sylmar Avenue
Van Nuys, CA 91401

CASE NUMBER:
*(Número del Caso):* LC094569

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
MARSHALL DENNIS SILVERS Tel: 818-447-6604
5442 Crebs Avenue
Tarzana, CA 91356

DATE: AUG 1 6 2011 JOHN A. CLARKE Clerk, by L. NAPHEN, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

B-2

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: LC094569 |
|---|---|
| | |

INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff ☑ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

HSBC BANK USA, NATIONAL ASSOCIATION, a national bank chartered by the Office of the Comptroller of the Currency and a member of the Federal Reserve System and the Federal Deposit Corporation;

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1, a securitized trust connected with the issuance of mortgage backed securities;

PHH MORTGAGE CORPORATION, a corporation licensed by the California Department of Corporations under the California Residential Mortgage Lending Act, individually and as attorney-in-fact for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1;

NDEX WEST, L.L.C., a limited liability corporation doing business in the State of California;

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation, individually and as nominee for UNITED PACIFIC MORTGAGE, a California General Partnership;

UNITED PACIFIC MORTGAGE, a California General Partnership; LSI, an unknown entity, identified as Trustee under the Deed of Trust recorded in Official Records of the Los Angeles County Recorder's Office as Document No. 06-2354885;

TIMOTHY F. GEITHNER, as United States Secretary of the Treasury;

THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association; and

DOES 1 through 50, inclusive,

Page 2 of 2

MARSHALL DENNIS SILVERS
In Pro Per
5442 Crebs Avenue
Tarzana, CA 91356
Telephone (818) 447-6604

Email: dennysilvers@yahoo.com

Attorney for Plaintiff,
MARSHALL DENNIS SILVERS

~~X~~ Summons Issued 8/16/201

ORIGINAL FILED
Northwest District
AUG 10 2011
LOS ANGELES SUPERIOR COURT

**LOS ANGELES SUPERIOR COURT**

**COUNTY OF LOS ANGELES, STATE OF CALIFORNIA**

**NORTHWEST DISTRICT, VAN NUYS COURTHOUSE**

| | |
|---|---|
| MARSHALL DENNIS SILVERS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, a national bank chartered by the Office of the Comptroller of the Currency and a member of the Federal Reserve System and the Federal Deposit Corporation; HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1, a securitized trust connected with the issuance of mortgage backed securities; PHH MORTGAGE CORPORATION, a corporation licensed by the California Department of Corporations under the California Residential Mortgage Lending Act, individually and as attorney-in-fact for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1; NDEX WEST, L.L.C., a limited liability corporation doing business in the State of California; ~~MORTGAGE ELECTRONIC~~ REGISTRATION SYSTEMS, INC., a Delaware corporation, individually and as nominee for UNITED PACIFIC MORTGAGE, a California General | Case No. LC094569<br><br>**COMPLAINT**<br><br>(TRIAL BY JURY IS DEMANDED) |

Partnership; UNITED PACIFIC MORTGAGE, a California General Partnership; LSI, an unknown entity, identified as Trustee under the Deed of Trust recorded in Official Records of the Los Angeles County Recorder's Office as Document No. 06-2354885; TIMOTHY F. GEITHNER, as United States Secretary of the Treasury; THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association; and DOES 1 through 50, inclusive,

Defendants.

Plaintiff MARSHALL DENNIS SILVERS alleges the following:

## I. INTRODUCTION

1. Plaintiff is the type of person that the federal government's foreclosure prevention program was intended to help. Plaintiff's primary household income, at all relevant times, is and was provided by plaintiff's self-employment. Plaintiff's income was substantially reduced due to a fire which destroyed his home, the failure of PHH to designate itself as the loss payee under the mortgage, PHH's subsequent obtaining a policy pre-dating the fire and unilaterally declaring its control of the insurance funds distributed to the contractor who began repairs on Plaintiff's home, failing to inspect the property but distributing insurance proceeds in breach of section 11 of the Deed of Trust comprising this mortgage, coercing Plaintiff to accept such terms against Plaintiff's best interests, including interfering with Plaintiff's business contract with the contractor hired to make repairs to Plaintiff's home, causing Plaintiff to incur unforeseen costs and expenses, and failing to fairly consider Plaintiff's request for a loan modification. Because of all this, Plaintiff fell behind on his monthly mortgage payments. A loan modification is needed for Plaintiff to get current and make the first mortgage loan sustainable. In addition, Plaintiff must be reimbursed for all expenses he was forced to incur for PHH's failure to designate itself as loss payee and its subsequent wrongdoing of illegally obtaining insurance pre-dating the fire and then unilaterally declaring control of the distribution of the insurance proceeds in breach of section 11 of the Deed of Trust, all against Plaintiff's best interests to the abject damage of Plaintiff's home and credit score, peace of mind and emotional security, and financial standing. Plaintiff alleges that all these Defendants colluded and conspired: to defraud Plaintiff, to deny Plaintiff to all rights to which he is entitled, to mislead Plaintiff in Plaintiff's attempt to obtain justice to which Plaintiff is entitled, and

to take Plaintiff's property without adherence to law and without due process. Plaintiff will seek leave of Court to amend this Complaint when all supporting documents and facts are made available to Plaintiff, even pursuant to that "qualified written request" ("QWR") under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e), specifically directed to Defendant HSBC Bank USA, National Association, as Trustee for PHH 2007-1, Its Assigns, And/Or Successors In Interest by letter dated April 21, 2011, and acknowledged as received by Defendant PHH by its reply letter dated June 6, 2011 and acknowledge by its representatives by telephone conversations with Plaintiff recorded by PHH for purported quality control purposes. The requested documents pursuant to Plaintiff's QWR have not been provided to Plaintiff and PHH has missed the federally-mandated deadline to produce. Plaintiff requested of these certain Defendants by letter and by telephone that the trustee's sale be postponed until Plaintiff receives and can fully review the documents to be provided pursuant to the QWR in order to negotiate a lawful settlement of these matters. Defendants are proceeding to conduct the trustee's sale against Plaintiff's lawful rights and in willful violation of federal and state laws. Defendants have failed to give substantive reply to Plaintiff's many written requests of Defendants as to the basis upon which Defendants are proceeding against Plaintiff in contravention of law and justice and have completely failed to address Plaintiff's claims of damages incurred and to be incurred and Plaintiff's claims of a conspiracy between these Defendants. Defendants have willfully conspired to ignore Plaintiff's legitimate claims as part of a scheme to rob Plaintiff of his property and to damage Plaintiff as herein alleged.

2. Plaintiff is eligible for the federal government's Home Affordable Modification Program ("HAMP") and the California State Modification Program (California Civil Code § 2923.53, Lender exemption affidavit thereto; hereinafter "Section 2923.53"), but he has been denied a modification, or even access to the program. Plaintiff repeatedly applied to the servicer of the home loan for a home loan modification through HAMP, and in response was repeatedly ignored. Plaintiff's constitutional right to procedural due process has been violated.

3. HAMP is part of a federal government's program to prevent foreclosures. California Civil Code § 2923.53 (including the Lender's affidavit of exemption thereto) is part of the California State Government's modification program to prevent foreclosures. Both the enabling legislation and the State and federal government's own implementing guidelines make it clear that eligible and qualified homeowners "shall" receive a loan modification, Thus creating legal

entitlements for homeowners facing foreclosure. Yet, the government has denied Plaintiff the most fundamental due process protections: notice of the basis for a decision, a meaningful opportunity to be heard, an opportunity to have a decision adverse to Plaintiff independently and objectively reviewed without bias, and an opportunity to appeal.

4. HAMP and its California corollary, Section 2923.53 does not require that homeowners be given any notice of a denial at all. The servicer of Plaintiff's home loan NEVER orally or otherwise advised Plaintiff that the HAMP program is not available for the loan, NEVER stated that they were not participating [in HAMP], and Plaintiff has not been given any notice of denial or the reasons therefore. HAMP is complex, and the lack of transparency prevents Plaintiff from correcting errors or misinformation. Lack of an opportunity to have a decision adverse to Plaintiff independently and objectively reviewed without bias, and an opportunity to appeal, makes it even more difficult to access the benefits.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's state and federal law claims. The property in question is located in this jurisdiction and the mortgage was entered into and its terms performed within this jurisdiction. The claims herein arise pursuant to and under the laws of the United States Constitution and the Truth in Lending Act, 15 U.S.C. § 1601 ("Act") to enforce the Plaintiff's right to rescind a consumer credit transaction, to void the Defendants' security interest in the Plaintiff's home, and to recover statutory damages, and punitive damages, and reasonable attorney's fees and costs by reason of the Defendants' violations of the Act and Regulation Z, 12 C.F.R. § 226 ("Regulation Z") and other unlawful actions of these Defendants, including failure of PHH to designate itself as loss payee, breach of section 11 of the Deed of Trust, interference with business contract, failure to fairly deal with Plaintiff in Plaintiff's request for loan modification. Plaintiff will seek leave of Court to amend and expand such allegations, even upon its receipt of documents requested pursuant to its QWR.

6. Plaintiff's action for declaratory relief is authorized by California Code of Civil Procedure § 1060-1062.5 and by 28 U.S.C. §§ 2201 and 2202.

//

//

//

## II. PARTIES

7. Plaintiff is, and at all times mentioned and relevant herein was, the owner of a residence located at 5442 Crebs Avenue, Tarzana, California 91356 (hereinafter subject "Property").

8. Upon information and belief, Defendant HSBC BANK USA, NATIONAL ASSOCIATION, a national bank chartered by the Office of the Comptroller of the Currency and a member of the Federal Reserve System and the Federal Deposit Corporation, is, and at all times mentioned and relevant herein was, a national bank engaged in commercial banking whose charter is approved by the Office of the Comptroller of the Currency, and doing business in the County of Los Angeles, State of California. Said Defendant claims to act as a "trustee for certain loan securitization trusts in connection with the issuance of mortgage backed securities. As trustee, the bank has only a nominal role with the respect to the properties owned by the trust. Under the agreements that establish the trusts, other companies are designated as the servicers of the loans and those servicers handle matters such as mortgage foreclosures, loan modifications, evictions and sales of foreclosed trust properties." (See Exhibit A hereto: Defendant HSBC's letter dated June 20, 2011 to Defendant.) On information and belief, at all times relevant herein, Defendant HSBC operated as a successor in interest or assignee or co-interest holder with Defendant PHH MORTGAGE CORPORATION and with Defendant HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1. Further discovery forthcoming will determine said Defendant's exact role and responsibilities and jurisdiction to control or influence decisions regarding the disposition of Plaintiff's mortgage, including the decision to proceed with or postpone the proposed trustee's sale on Plaintiff's Property. Plaintiff will seek leave of Court to allege same upon ascertainment and/or discovery.

9. Upon information and belief, Defendant HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1, is a securitized trust connected with the issuance of mortgage backed securities and at all times relevant herein was doing business in the County of Los Angeles, State of California, and is purported to be the "Assignee" pursuant to an Assignment of Deed of Trust regarding the Property, recorded 5/4/2010 in the Official Records of the Los Angeles County Recorder's Office as Instrument No. 2010-0602500, which "Assignee"

received such assignment by the action of Mortgage Electronic Registration Systems, Inc. ("MERS") as Nominee for United Pacific Mortgage, a corporation, signed by Marc J. Hinkle, Vice President, PHH Mortgage Corp. as Authorized Agent in the State of New Jersey, and notarized. (See Exhibit B hereto: Assignment of Deed of Trust recorded 5/4/2010 in the Official Records of the Los Angeles County Recorder's Office as Instrument No. 2010-0602500.) Further discovery forthcoming will determine said Defendant's exact role and responsibilities and jurisdiction to control or influence decisions regarding the disposition of Plaintiff's mortgage, including the decision to proceed with or postpone the proposed trustee's sale on Plaintiff's Property. Plaintiff will seek leave of Court to allege same upon ascertainment and/or discovery. Plaintiff alleges that contrary to the notarized statement signed by Marc J. Hinkle for MERS, United Pacific Mortgage is not a corporation but is in fact a General Partnership (See Exhibit C hereto: Deed of Trust regarding the Property, recorded 10/24/2006 in the Official Records of the Los Angeles County Recorder's Office as Instrument No. 06-2354885.) United Pacific Mortgage is identified as "Lender" and as a General Partnership on such Deed of Trust, Exhibit C hereto. On information and belief, at all times relevant herein, Defendant HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1 operated as a successor in interest or assignee or co-interest holder with Defendant PHH MORTGAGE CORPORATION and with Defendant HSBC.

10. Upon information and belief, Defendant PHH MORTGAGE CORPORATION, is a corporation licensed by the California Department of Corporations under the California Residential Mortgage Lending Act, and at all times relevant herein was doing business in the County of Los Angeles, State of California, and is purported to be and has in fact taken action as representing itself to be attorney-in-fact for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1 pursuant to a Substitution of Trustee regarding the Property, recorded 5/25/2010 in the Official Records of the Los Angeles County Recorder's Office as Instrument No. 2010-0707740, whereby said Defendant substituted NDEx West, L.L.C., whose address is 15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013, as Trustee under said Deed of Trust instead of original Trustee LSI, whereby further Defendant NDEx which is now purporting to act

as "Trustee" in proceeding to conduct a trustee's sale of the Property. Said Substitution of Trustee records such substitution by the action of HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1 By PHH Mortgage Corporation as Attorney in Fact, signed by Marc J. Hinkle, Vice President, PHH Mortgage Corp. as Authorized Agent in the State of New Jersey, and notarized. Said Substitution of Trustee further identifies MERS as the original "Beneficiary" under said Deed of Trust. (See Exhibit D hereto: Substitution of Trustee regarding the Property, recorded 5/25/2010 in the Official Records of the Los Angeles County Recorder's Office as Instrument No. 2010-0707740.) Further discovery forthcoming will determine said Defendant PHH's exact role and responsibilities and jurisdiction to control or influence decisions regarding the disposition of Plaintiff's mortgage, including the decision to proceed with or postpone the proposed trustee's sale on Plaintiff's Property or to take any actions against Plaintiff in the State of California or at all. Plaintiff will seek leave of Court to allege same upon ascertainment and/or discovery. Plaintiff alleges on information and belief that PHH had no authority to act as purported attorney-in-fact for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1 and that such purported capacity is a sham and a fraud and no corporate documents exist to sanction same. Further discovery forthcoming will determine said Defendant's exact role and responsibilities and jurisdiction and authority regarding same and Plaintiff will seek leave of Court to allege same upon ascertainment and/or discovery. On information and belief, at all times relevant herein, Defendant PHH operated as a successor in interest or assignee to Defendant UNITED PACIFIC MORTGAGE.

11. Upon information and belief, Defendant NDEX WEST, L.L.C., is a limited liability corporation doing business in the State of California, whose address is recorded as 15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013 on the Substitution of Trustee, Exhibit D hereto, and is purportedly acting as "Trustee" proceeding to conduct the trustee's sale of the Property, and at all times relevant herein was doing business in the County of Los Angeles, State of California. Plaintiff alleges that Defendant NDEX's authority to act as "Trustee" to conduct the trustee's sale on the Property is defective as PHH had no authority to confer such authority by the Substitution of Trustee, Exhibit D hereto. Further discovery forthcoming will determine said

Defendant's exact role and responsibilities and jurisdiction and authority to act as "Trustee" and proceed to conduct the trustee's sale of the Property and Plaintiff will seek leave of Court to allege same upon ascertainment and/or discovery.

12. Upon information and belief, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), is a Delaware corporation, and is identified as nominee for UNITED PACIFIC MORTGAGE, a California General Partnership, on Exhibit C hereto: Deed of Trust regarding the Property, and at all times relevant herein was doing business in the County of Los Angeles, State of California. Plaintiff alleges on information and belief that MERS is an invention created whereby mortgage companies, lenders and others might and did proceed to circumvent the valid laws of, in this case, the State of California, laws which govern the lawful transfers and assignments of real estate requiring recordation and payment of fees pursuant to statutes and other local jurisdictional requirements . Plaintiff alleges on information and belief that MERS is a sham and illegal and unlawful fiction meant to defraud state governments and local governments therein and create a scheme to bypass the laws governing real estate transactions, and specifically acted to defraud Plaintiff of Plaintiff's lawful rights against law and equity. Plaintiff alleges on information and belief that for all these reasons the actions taken by MERS are not enforceable upon this Plaintiff or at all. Further discovery forthcoming will determine said Defendant MERS's exact role and responsibilities and lack thereof, and jurisdiction and lack thereof, and authority and lack thereof, regarding the transfer of rights and responsibilities regarding the Property and Plaintiff will seek leave of Court to allege same upon ascertainment and/or discovery.

13. Upon information and belief, Defendant UNITED PACIFIC MORTGAGE, was at all times relevant herein a California General Partnership and was doing business in the County of Los Angeles, State of California, and it assigned its rights as "Lender" to Defendant PHH MORTGAGE CORPORATION and Defendant PHH operated as a successor in interest or assignee or "Servicer" of the mortgage on the Property. Further discovery forthcoming will determine said Defendant UNITED PACIFIC MORTGAGE's exact role and authority to assign its

rights and responsibilities and failures regarding same regarding the Property and Plaintiff will seek leave of Court to allege same upon ascertainment and/or discovery.

14. Upon information and belief, Defendant LSI, is an unknown entity, and at all times relevant herein was doing business in the County of Los Angeles, State of California, and is identified as Trustee under the Deed of Trust recorded in Official Records of the Los Angeles County Recorder's Office as Document No. 06-2354885, Exhibit C hereto, and that it acted as "Trustee" of Plaintiff's loan on his Property. Further discovery forthcoming will determine said Defendant's exact capacity and roles and Plaintiff will seek leave of Court to allege same upon ascertainment and/or discovery.

15. Upon information and belief, Defendant TIMOTHY F. GEITHNER is United States Secretary of the Treasury, ("Geithner") and is and was at all times herein relevant, operating in the County of Los Angeles, State of California.

16. On information and belief, Defendant THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association, ("FHFA") is and was at all times herein relevant, operating in the County of Los Angeles, State of California.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants designated herein as a DOE is responsible in some manner, way, form and to some extent for the events and occurrences referred to herein, and for the damages resulting to Plaintiff. At such times as Plaintiff learns the true name and capacity of any Defendant named as a DOE herein, Plaintiff will seek leave of court to amend his complaint to identify said Defendant, and include accompanying charging allegations.

18. Plaintiff is informed and believes, and thereon allege, that at all times mentioned and relevant herein, each and every Defendant, including said fictitiously named Defendants, was the principal, agent, master, servant, co-venturers, co-conspirator and employer or employee of each and every other Defendant, and at all times relevant herein was acting in such capacity. Plaintiff further allege that the acts performed by them in such capacities were performed within the course

entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money.

95. Plaintiff is informed and believes that the Defendants' purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Plaintiff and have only recently been discovered by Plaintiff through consultation with experts in securitization of residential mortgage loans and diligent research.

96. Plaintiff is informed and believes that Lender was named as the Payee on the loan and the lender under deeds allegedly securing performance of the loan. Plaintiff is the named payer on the loan. In accordance with State law, any deeds and terms of security should have been recorded in the county records.

97. Plaintiff is now informed and believes that notwithstanding the above, and without the knowledge of the Plaintiff at the time, the Lender had entered into an assignment and assumption agreement with one or more parties and a pooling and service agreement with one or more parties prior to or contemporaneously with the closing of the subject loan transaction. Under the terms of these agreements, the Lender received certain payments not disclosed to Plaintiff.

## DEFENDANTS FAILED TO DISCLOSE TO PLAINTIFF ITS FRAUDULENT SCHEME OF PACKAGING PLAINTIFF'S LOAN IN MORTGAGE BACKED SECURITIES, CREDIT DEFAULT SWAPS UTILIZED BY PLAINTIFF TO HIDE RISK AND MAXIMIZE PROFITS CAUSING DAMAGES TO PLAINTIFF.

98. Plaintiff is informed and believes that contrary to the documents presented before and during the closing of the loan transaction, the Lender was neither the source of funding nor the actual lender.

99. Thus at the time of recording, the source of funding and the lender was a different entity than the nominal mortgagee or beneficiary under the deed of trust and was neither named nor disclosed in any fashion.

100. The security for the loan thus secured an obligation to the Lender that had been paid in full by a third party, the actual lender. Said third party was acting as a institution or lender without even having been chartered or registered to do so despite regulations to the contrary from laws and rules of State or Federal authorities and/or agencies.

101. Plaintiff is informed and believes that the loan and deed were ostensibly allocated into a new entity (Special Purpose Vehicle "SPV") formed for the express purpose of holding the

pooled assets under certain terms.

102. The terms included the allocation of payments from one note to pay any deficiency in payment of another note in unrelated loan transactions contrary to the terms of each such note which required payments to be allocated to the principal, interest, escrow and fees associated with only that specific loan transaction.

103. Whether such deficiency was caused by the difference between the higher general terms of description of the note or the lower actual payment requirements from the borrower is not known.

104. Plaintiff is informed and believes that insurance was purchased from proceeds of these transactions, credit default swaps were purchased from proceeds of these transactions, the investors' investments were oversold to create a reserve pool from which the SPV could pay deficiencies in payments, and the SPV created cross-collateralization agreements and overcollateralization of the pool assets to assure payments to the investors, thus creating co-obligors on the payment stream due from the Plaintiff on the loan.

105. The pool assets, including the loan and deed were pledged completely to the owners of the asset-backed securities. All the certificates were then transferred to others who in turn sold the certificates in varying denominations, each of which had slightly different terms depending upon which segment of the pools (tranches) secured the investments.

106. If there is a holder in due course of the Plaintiff's loan and deed arising from the subject loan transactions it is the investors who purchased said securities (certificates). Some of said securities are held by the original purchaser thereof, others were sold at weekly auction markets, others were paid by re-sales of property that was secured, others were paid from prepayments, others were paid by sale at full or partial price to the investment bank that originated the entire transaction, some of which might be held by the Federal Reserve as nonrecourse collateral, and others might have been paid by one or more of the insurance, credit default swaps, cross guarantees or cross collateralization of the segment of the pool that secured the relevant investor who owned certificates backed by a pool of assets that included the subject loan transaction.

**DEFENDANTS' FRAUDULENT MORTGAGE BACKED SECURITIES VIOLATED SECURITIES EXCHANGE COMMISSION REGULATIONS**

107. Moreover, Plaintiff is informed and believes and thereon alleges that the unlawfully

related, interconnected, and controlled entities of the business combinations violated regulations promulgated by the Securities Exchange Commission ("SEC"), generally accepted accounting principles ("GAAP") and accounting standards ("FAS") such that the purported transfer of the loan and deed were not "true sales" or defeasances, but instead had, by agreement of the business combinations, Defendants included, indicia of retained control, including repurchase rights and obligations, that provided incentives to them to preclude and avoid Plaintiff from discovering the true beneficial holders of Plaintiff's instruments, and thus providing Plaintiff a true, meaningful opportunity to avoid loss to himself, and correlatively, an opportunity for the true note holders to mitigate their own loss of investments by a mutually acceptable modification of the loan. Plaintiff is informed and believes and thereon alleges that as a consequence of the wrong acts and conduct of Defendants herein alleged, both Plaintiff and the true note holders have been irreparably harmed and damaged.

## THE FEDERAL GOVERNMENT'S FORECLOSURE PREVENTION AND LOAN MODIFICATION PROGRAM

108. The United States Congress passed the Emergency Economic Stabilization Act of 2008 (the" Act") on October 3, 2008. (12 U.S.C. § 5211 et. seq.) The purpose of the Act was to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system, and ensure that such authority was used, in part, to "preserve homeownership." (Act, 2(1)(B)). In addition to allocating $700 billion to the United States Department of the Treasury, the Act also specifically granted the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program or TARP ("TARP"). (12 U.S.C. §§ 5211, 5225.)

109. In exercising its authority to administer TARP, Congress mandated that the Secretary of the Treasury "shall" take into consideration the "need to help families keep their homes and to stabilize communities." (12 U.S.C. § 5213(3).) To that end, Congress created two specific sections within Title I of the Act related to homeowners. Section 109 of the Act is entitled "Foreclosure Mitigation Efforts," and specifically states that the Secretary "shall" implement a plan to "maximize assistance for homeowners." (12 U.S.C. § 5219(a)). These efforts are to be coordinated with the federal agencies including the Federal Housing Finance Agency, which is the conservator for Fannie Mae and Freddie Mac. The Act further requires the Secretary of the Treasury to consent to any reasonable loan modification offer:

> "[T]he Secretary ***shall*** consent, where appropriate, and considering net present value to the taxpayer, to reasonable requests for loss mitigation measures, including term extensions, rate reduction, principal write downs, increases in the proportion of loans within a trust or other structure allowed to be modified or removal of other limitations on modifications."

(emphasis added; 12 U.S.C. § 5219(c)).

110. Similarly, Section of the Act requires the Federal Housing Finance Agency, as conservator for Fannie Mae and Freddie Mac, to create and implement a plan to prevent foreclosures. Specifically, the Act states:

> [T]he Federal property manager [defined, in part, as the Federal Housing Finance Agency] shall implement a plan that seeks to maximize assistance for homeowners and ... minimize foreclosures.

(U.S.C. § 5220(b)(1).

111. The statutory tools to be used by Fannie Mae and Freddie Mac include reducing interest rates and reducing the principal balance of mortgage loans.

**MAKING HOME AFFORDABLE PROGRAM AND HAMP**

112. Pursuant to its legal authority, as granted to it by Congress, both the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program on February 18, 2009. The Making Home Affordable program consists of two subprograms. The first subprogram relates to the creation of refinancing products for individuals with minimal or negative equity in their home, which eventually was entitled the Home Affordable Refinance Program or HARP. The second subprogram relates to the creation and implementation of a uniform loan modification protocol, which eventually was entitled the Home Affordable Modification Program or HAMP.

113. The scope of HAMP is broad. The Treasury Department estimated that approximately 85 percent of homeowners in the United States are eligible for the program. Homeowners who meet the government's criteria and standards for the program are entitled to a loan modification pursuant to the terms of HAMP. A mortgage loan servicer implementing HAMP does not have discretion to deny a homeowner access to the HAMP program if the homeowner satisfies the government's criteria for the program.

114. HAMP is funded by the federal government, primarily with TARP funds. The Treasury Department has allocated at least $50 billion of its TARP money to fund the HARP refinance and HAMP modification programs and offered an additional $25 billion of non-TARP funds, totaling $75 billion.

115. By statute, the Treasury Department, Fannie Mae and Freddie Mac must jointly develop the policies and procedures for the Making Home Affordable Program, including HAMP.

116. Fannie Mae is the fiscal agent of the federal government for HAMP. Freddie Mac is responsible for compliance, that is, auditing mortgage loan servicers for compliance with program rules and protocols. HAMP applies to any mortgage loan owned by Fannie Mae and Freddie Mac, as well as any loans owned by companies that accepted the TARP money or who volunteered to participate in the program.

117. Defendant PHH led Plaintiff to believe that it was going to provide the loan modification to Plaintiff pursuant to HAMP whereby PHH would be bound to administer HAMP and participate in the program, entering into a "Commitment to Purchase Financial Instruments and Servicer Participation Agreement for the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008 ("CHASE SPA" when referring to this specific contract; "SPA" when referring to such contracts in general) contract with Defendant Fannie Mae, as financial agent for the United States, where it would be bound to abide by the framework and protocols for administering the benefits of HAMP.

**<u>HAMP IMPLEMENTATION FRAMEWORK</u>**

118. From March 4, 2009, to present, the Treasury Department, Fannie Mae and Freddie Mac have issued a series of directives for the servicers of mortgage loans and the implementation of HAMP. The directives set forth the framework and protocol to implement HAMP. Fannie Mae and Freddie Mac both mandate that its servicers participate in HAMP. Guidelines issued by Fannie Mae, Freddie Mac, or the Treasury Department are also legally binding for program participants.

119. HAMP is always clearly identified as a program of the federal government. For example, Defendant CHASE states on its website that Making Home Affordable is part of President Obama's comprehensive strategy to get the housing market back on track. Through the Making Home Affordable Program, up to millions of American families may be eligible to refinance or modify their loan payment to a more affordable payment now and into the future. The program has a modification provision as well as a refinance provision. Borrowers can get additional information

at the Making Home Affordable website. This site includes questions and answers that will help homeowners determine if they are eligible for assistance.

120. HAMP is premised on the idea that getting a homeowner's monthly payment to 31% of the homeowner's gross monthly income will be a sustainable loan modification. (U.S. Department of Treasury's Making Home Affordable Summary of Guidelines March 4, 2009.) Prior to any foreclosure, mortgage loan servicers are required to follow three basic steps for all distressed homeowners with the goal of reaching a monthly mortgage payment of 31% of the homeowner's gross monthly income. (Fannie Mae, Announcement 09-05R; Freddie Mac, Single Family Servicer Guide C 65.1; Treasury Department, Supplemental Directive 09-01).

121. The first step is to identify the homeowner's income. Initially the income may be unverified, and then the mortgage loan servicer must create a three-month trial period while it verifies income. Once income is verified, the modification becomes permanent. The second step is to calculate the "target payment," which is 31 % of the homeowner's gross monthly income.

122. The third step is to implement the "loss mitigation waterfall." The servicer is required to use each loss mitigation tool within the waterfall, in the correct order, until the servicer reaches the target payment. There are four loss mitigation tools in the waterfall, which must be applied in the following order: (a) capitalizing arrearages, meaning that accrued interest, funds advanced by the servicer, and appropriate foreclosure expenses incurred by the servicer are added to the existing principal balance of the mortgage loan; (b) reducing the interest in increments of .125% until the target payment is reached or the servicer reaches a 2% floor; (c) extending the term of the loan or amortization period by one month increments until the target payment is reached, but the loan schedule cannot exceed 480 months (40 years) from the date of the loan modification; and, finally (d) forbearing a part of the principal balance, meaning that the principal amount of the loan will be reduced in increments until the target payment is reached. The reduction, however, is not forgiven. It is simply a balloon payment that must be paid at the end of the loan term. The principal balance forbearance does not accrue interest or amortize. It is also not included in calculating a monthly payment.

123. Initial eligibility for HAMP is determined by the five general criteria previously described in the foregoing.

//

## PHH'S FAILED PROMISES UNDER HAMP

124. Actual interface with borrowers – including such tasks as payment processing, escrow maintenance, loss mitigation and foreclosure – are known as "servicers." Servicers typically act as the agents of the entities that hold mortgage loans.

125. Should a servicer elect to participate in HAMP, they execute a Servicer Participation Agreement ("SPA") with the federal government and Fannie Mae and agreed to incorporate all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Freddie Mac in connection with the duties of Participating Servicers. These documents together are known as the "Program Documentation" and are incorporated by reference herein.

126. The SPA mandates that a Participating Servicer "shall perform" the activities described in the Program Documentation "for all mortgage loans it services." (SPA 1.A., 2.A.). The Program Documentation requires Participating Servicers to evaluate all loans, which are 60 or more days delinquent for HAMP modifications. (SD 09-01 p. 4.) In addition, if a borrower contacts a Participating Servicer regarding a HAMP modification, the Participating Servicer must collect income and hardship information to determine if HAMP is appropriate for the borrower.

127. Certain classes of loans, namely those held by Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac") or companies that accepted money under the TARP program, are subject to mandatory inclusion in HAMP. The Program Documentation also includes Supplemental Directive 09-01 ("SD 09-01,"). Home Affordable Modification Program; Base Net Present Value (NPV) Model Specifications ("NPV Overview,") and Supplemental Documentation—Frequently Asked Questions ("HAMPFAQS,") and Supplemental Directive 09-08 ("SD 09-08,"). These documents together describe the basic activities required under HAMP and are incorporated by reference in both of the TPP Agreements signed by Plaintiffs as well as herein.

128. A HAMP Modification consists of two stages. First, a Participating Servicer is required to gather information and, if appropriate, offer the homeowner a Trial Period Plan ("TPP"). The TPP consists of a three-month period in which the homeowner makes mortgage payments based on a formula that uses the initial financial information provided. TPPs are offered to eligible homeowners by way of a TPP Agreement, which describes the homeowner's duties and obligations under the plan and promises a permanent HAMP modification for those homeowners that execute

the agreement and fulfill the documentation and payment requirements. If the homeowner executes the TPP Agreement, complies with all documentation requirements and makes all three TPP monthly payments, the second stage of the HAMP process is triggered, in which the homeowner is offered a permanent modification. The eligibility criteria for HAMP, as well as the formula used to calculate monthly mortgage payments under the modification, are explained in detail in SD 09-01. Generally speaking, the goal of a HAMP modification is for owner-occupants to receive a modification of a first-lien loan by which the monthly mortgage payment is reduced to 31% of their monthly income for the next five years.

**PHH'S FAILURE TO ENGAGE IN APPROPRIATE LOSS MITIGATION ESTOPS PHH'S ATTEMPTS AT FORECLOSURE, AS A MATTER OF LAW**

129. PHH's failure and/or inability to offer Plaintiff a HAMP loan modification for which Plaintiff was eligible before proceeding or threatening foreclosure is violative of HAMP. (Making Home Affordable Guidelines, Department of Treasury, March 2009). Pursuant to HAMP and Cal. Civ. Code § 2923.53 exemption affidavit, Plaintiff is to be offered a modification that lowers their monthly mortgage payment to a targeted 31% of their monthly gross income. PHH's inability to legally foreclose on Plaintiff rests on the determination of two important legal issues: 1) whether a Servicer must conduct a Net Present Value (NPV) analysis of Plaintiff's eligibility for a loan modification before the foreclosure, and 2) if eligibility is found, whether the loan modification produced by the NPV analysis must be offered before the foreclosure. A number of theories can also serve as the basis for affirmative actions against services for their routine failure to abide by HAMP guidelines. As of this writing at least one statewide class action has been field challenging a HAMP Servicer's denial of loan modifications. (*Williams v. Geithner* (D. Minn.). Material about this case, including the complaint, is available at www.hppinc.org/ projects/index.php? strWebAction=resource_detail&intResourceID=112.

130. Plaintiff has a meritorious cause of action against PHH based on its denial of procedural due process of government HAMP benefit. Said theory is based on a series of successful lawsuits in the early 1980s by farmers. The farmers were denied access to a government program to prevent foreclosure during the farm crisis, and alleged very similar issues to the problems with HAMP. In those lawsuits, those plaintiffs also successfully obtained a moratorium on foreclosure until the government promulgated the proper rules or guidelines.

**THE NPV ANALYSIS OF PLAINTIFF'S APPLICATION REVEALS THAT PHH'S INVESTOR WILL DO BETTER FINANCIALLY FROM A LOAN MODIFICATION THAN A FORECLOSURE, THERE IS LITTLE JUSTIFICATION FOR A FORECLOSURE TO PROCEED WHEN BOTH THE INVESTOR AND PLAINTIFF WILL BE BETTER OFF FROM A LOAN MODIFICATION.**

134. The Equitable Nature of Foreclosure Requires that Servicers Offer Plaintiff a HAMP Loan Modification. The court of equity's requirements for fairness and reasonableness are not met if a Servicer foregoes HAMP's required analysis. Both the HAMP guidelines and the new law entitle eligible Plaintiffs to the NPV analysis, and it would not be equitable for a court to permit foreclosure where this requirement has not been met.

135. Foreclosure is an equitable remedy- the majority rule is that default does not automatically entitle the mortgagee to foreclosure on the property. (See, e.g., *Woods v. Monticello Dev. Co.*, 687 P.2d 1324 (Colo. Ct. App. 1982) ("Equitable remedies are not automatic- the term itself implies a balancing"); *Sovereign Bank, E.S.B. v. Kuelzow*, 687 A.2d 1039 (N.J. Super .Ct. App. Div. 1997) ("Foreclosure is a discretionary remedy."; *M&T Mortg. Corp. v. Foy*, 858 N.Y.S.2d 567 (N.Y. Sup. Ct. 2008) ("The courts are not merely automatons mindlessly processing paper motions in mortgage foreclosure actions most of which proceed on default."); *Rosselot v. Heimbrock*, 54 Ohio App. 3d 103, 561 N.E.2d 555 (Ohio Ct. App. 1988) ("simply because appellant defaulted on the terms of his obligation to appellees docs not automatically entitle them to foreclosure because foreclosure of a mortgagor's equity of redemption is a separate question from the existence of a default on the underlying obligation"); see also 30A, C.J.S. Equity § 69 (2007) ("The granting of relief against forfeiture is generally discretionary, the controlling principle being that it will be granted where, and only where, it is equitable under the circumstances").

136. A court sitting in equity is obligated to evaluate its various options and seek a fair and reasonable result under the circumstances, (See, e.g., *Bisno v. Sax*, 175 Cal. App. 2d 714, 346 P.2d 814 (1959); *New Alliance Bank v. Win Holdings Int'l*, 2008 WL 732036 (Conn. Super. Ct. Feb. 27, 2008); *Rosselot v. Hembrock*, 561 N.E.2d 555 (Ohio Ct. App. 1998). Whether in a judicial or non-judicial foreclosure state. (See, e.g., *Lo v. Jensen*, 88 Cal. App. 4th 1093, 106 Cal. Rptr. 2d 443 (2001) ("if a non-judicial foreclosure sale has been unfairly or unlawfully conducted, the trial court has the power to set it aside"); *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544 (2003) ("the trustor can sue in equity to set the sale aside."); see also Molly E. Jacobson-Greany, setting Aside

Nonjudicial Foreclosure Sales: Extending the Rule to Cover Both Intrinsic and Extrinsic Fraud or Unfairness, 23 Emory Bankr. Dev. J. 139 (2006).

137. A loan modification NPV analysis simply evaluates whether the investor will benefit to a greater extent with a loan modification than from a foreclosure. (See also Diane Pendley, Thomas Crowe, U.S. RMBS Servicers' Mitigation and Modification Efforts, Fitch Ratings: Structured Finance 1 (May 26, 2009). A HAMP loan modification analysis should be a prerequisite to allowing the equitable remedy of foreclosure, as "he who seeks equity must first do equity." (See, e.g., *Arizona Coffee Shop, Inc. v. Phoenix Downtown Parking Ass'n*, 95 Ariz., 98, 387 P.2d 801 (1963).

138. In addition, the party seeking to obtain the benefits of an equitable remedy must have clean hands. (*Servicer Home Mortg., Inc. v. Neal, at* 552.) As one court articulated the point: "The clean hands doctrine is applied not for the protection of the parties but for the protection of the court.... It is applied not by way of punishment but on considerations that make for the advancement of right and justice." (See, e.g., *Thompson v. Orcutt*, 257 Conn. 301, 310, 777 A.2d 670, 676 (2001) (citations omitted).

**PHH'S FAILURE TO COMPLY WITH THE HAMP NPV ANALYSIS CONSTITUTES "UNCLEAN HANDS" WHICH PRECLUDED FORECLOSURE AND TRANSLATES INTO PLAINTIFF'S NOT BEING IN DEFAULT UNDER THE MORTGAGE WHICH WOULD MEAN THERE WOULD BE NO GROUNDS FOR THE FORECLOSURE AND THE FORECLOSURE SHOULD NOT BE PERMITTED**

139. A number of courts have relied upon the "unclean hands" doctrine to prevent foreclosure, despite a Servicer's legal right to foreclose. (*LaSalle v. Bank Nat'l Ass'n v. Bardales*, 2009 WL 1312509 (Conn. Super. Ct. Apr. 14, 2009); *New Alliance Bank V. Win Holdings Int'l, Inc.*, 2008 WL 732036 (Conn. Super. Ct. Feb. 27, 2008); *Monetary Funding Group, Inc. v. Pluchino*, 2003 WL 22133826 (Conn. Super. Ct. Sept. 3, 2003); *Marin v. Seven of Five Ltd.*, 921 So. 2d (Fla. Dist. Ct. App. 2006); *Prudential Ins. Co. of Am. V. Jackson*, 270 N.J. Super. 510, 637 A.2d 573 (N.J. Super. Ct. App. Div. 1994); *M&T Mortg. Corp. V. Foy*, 858 N.Y.S.2d 567 (N.Y. Sup. Ct. 2008).

140. Courts often recognize the harshness of forfeiture in real estate contracts and, under the maxim "equity abhors a forfeiture," have in various jurisdictions refused in equity to uphold strict forfeiture provisions in contracts. (See, e.g. *Warner v. Haught, Inc.*, 329 S.E.2d 88 (W. Va.

> "in the event that any mortgage loan is in default or, … the Servicer, consistent with Accepted Servicing Practices may waive, modify or vary any term of such mortgage loan …, accept payment … of an amount less than the stated principal balance in final satisfaction of such mortgage loan, or consent to the postponement of strict compliance with any such term or otherwise grant indulgence to any mortgagor. (Emphasis added).

(See Pooling & Servicing Agreement, ACE Securities Corp., Home Equity Loan Trust, Series 2006-ASAP3 Asset Backed Pass-Through Certificates.)

**PHH'S IMPROPER DENIAL OF A LOAN MODIFICATION EQUALS CHASE HAS CONDUCTED NO NPV ANALYSIS, AS REQUIRED BY LAW.**

145. HAMP guidelines obligate evaluation of the homeowner, the loan, and the home to see if the NPV analysis will return a sustainable loan modification. Implicit in that requirement is that the evaluation be reasonable and based upon applicable legal guidelines. A federally sponsored test for the fairness of valuation is on the publicly available FDIC Loan Mod in a Box. The FDIC has made available a spreadsheet analysis which is easily used on most spreadsheet software. As a result, a finding that a homeowner qualifies for a FDIC loan modification should indicate that PHH's denial of a loan modification under the HAMP program was unreasonable.

146. The NPV calculation only measures the expected benefit to investors of a loan modification versus a foreclosure. Keep in mind that the NPV does not take account of the legal claims for relief a consumer may have, or the cost and time of litigation or any of the larger societal costs of a preventable foreclosure. As such, there will be cases when a borrower may fail the NPV but should still be offered a loan modification. These requirements are intended to protect the investors with additional benefits to homeowners from fewer foreclosures.

**NON-EXISTENCE OF SPECIFIC NOTIFICATION PROCEDURES OR DISCLOSURE REQUIREMENTS FOR A HOMEOWNER THAT IS DENIED ACCESS TO HAMP**

147. There are no requirements that homeowners are told the specific reasons for their denial of a HAMP modification, and, in fact, the government requires no notice at all.

148. In contrast, all HAMP servicers have very specific requirements, instructions, and model letters related to homeowners who are accepted into the program. Denial is devoid of uniformity and standards. There is no model letter related to a denial of a HAMP modification.

There are no requirements to inform a homeowner why they are denied access to the program, or any transparency related to how the loss mitigation waterfall was applied.

149. There is only one sentence in the entire guidance issued by Fannie Mae and the Treasury Department that addresses the topic of denial. In it, both Fannie Mae and the Treasury Department simply encourage servicers to communicate in writing, but such communication is not required and the notice does not need any detail. This sentence provides that after a borrower has submitted a signed Trial Period Plan to the service, if it is determined that the borrower does not meet the underwriting or eligibility standards, the servicer should promptly communicate this determination to the borrower in writing.

150. There is no written guidance or requirements at all related to homeowners who do not sign a Trial Period Plan and are denied access to the program without being given a temporary modification. Similarly, Freddie Mac has a half dozen standard documents or letters to be used for correspondence with homeowners who are eligible and accepted into HAMP. None of these documents relate to what and how a denial of access to HAMP should be communicated with homeowners. Elsewhere in the guide, there are no requirements that homeowners be contacted in writing related to their denial. Indeed, the only the person that is required to be informed in writing of the denial and basis for the denial by the servicer is Freddie Mac.

**NON-EXISTENCE OF ANY PROCEDURE PROVIDING A MEANINGFUL OPPORTUNITY TO BE HEARD, OR ANY PROCEDURE FOR IMPARTIAL REVIEW OR APPEAL OF AN ADVERSE DECISION OR TO UNDO A WRONGFUL FORECLOSURE**

151. As alleged above, Defendants have created specific eligibility requirements and procedures that servicers must implement to get the monthly payments of distressed homeowners to the target payment. Defendants have also ordered Fannie Mae and Freddie Mac mortgage loan servicers and the participating servicers to suspend foreclosure proceedings for all eligible homeowners until they are determined to be eligible for HAMP or, if not eligible for HAMP, the loss mitigation program offered by the servicer.

152. Specifically, on March 4, 2009, the Treasury Department, Fannie Mae, and Freddie Mac ordered all of its servicers to cease foreclosures until homeowners were evaluated for eligibility for a modification through HAMP. Nonetheless, Defendants have not established any procedure providing borrowers such as Plaintiff with any meaningful opportunity to be heard, or

with the right to have decisions affecting their rights under HAMP to be reviewed by an impartial arbiter, or to be appealed. As a result, wrong, arbitrary or capricious decisions affecting borrowers are without any procedure to correct errors and mistakes.

153. Defendants have no uniform program or procedure to ensure that the homeowner/borrower is given a meaningful opportunity to be heard, or to obtain review by an impartial arbiter, or to appeal, and have such appeal properly considered and impartially decided. There is also no mandatory process for how an appeal is communicated or triggered, nor is there evaluation criteria that all servicers must use when their decision to deny access to HAMP is appealed that would ensure "fair," "timely," and" appropriate" responses.

154. Further, if servicers do have such a process, there is no requirement that homeowners who are denied a HAMP modification be provided written notice of how to access any appeal process.

**PLAINTIFF IS ELIGIBLE FOR A LOAN MODIFICATION UNDER HAMP**

155. Plaintiff is, and at all times relevant has been a good candidate for a loan modification under HAMP and has met all of the eligibility requirements for a loan modification through HAMP determined by five general criteria.

**SERVICER'S FAILURE TO PROVIDE REASON(S) FOR HAMP PROGRAM DENIAL**

156. Despite satisfying these eligibility criteria, Plaintiff was denied a loan modification and has not been provided with any reasons why he has been denied a loan modification, whether under HAMP or not, or even his right to have a request for a modification considered.

**LACK OF VALID BASIS FOR REFUSAL TO CONSIDER REQUEST FOR HAMP LOAN MODIFICATION**

157. The HAMP regulations and protocol required loan modification to all borrowers who meet its eligibility standards, and who thereafter meet the qualification requirements (e.g., providing verification of income therefore a permanent modification is done, passing the *Net* Asset Value test, etc:), with the exceptions discussed below. Loans owned, securitized or guaranteed by Fannie Mae or Freddie Mac are referred to as government sponsored enterprise, or GSE, loans.

158. A mortgage loan servicer that has executed an SPA is required to offer HAMP to all eligible borrowers whose loans are non-GSE owned, securitized or guaranteed, except with certain exceptions as follows:

> "Authority and Agreement to Participate in Program. A. Servicer *shall* perform the Services for *all mortgage loans it services*, whether it services such mortgage loans for its own account *or for the account of another party, including any holders of mortgage-backed securities* (each such other party, and "Investor"). Servicer shall use *reasonable efforts* to remove all prohibitions or impediments to its authority, and use *reasonable efforts* to obtain all third party consents and waivers that are required, by contract or law, *in order to effectuate any modification of a mortgage loan under the Program.*"

> "B. Notwithstanding subsection A., if (x) Servicer is *unable* to obtain all necessary consents and waivers for modifying a mortgage loan, or *(y)* the pooling and servicing agreement or oilier similar servicing contract governing servicer's servicing of a mortgage loan *prohibits* Servicer from performing the services *for that mortgage loan*, Servicer shall not be required to perform the Services with respect to that mortgage loan and shall not receive all or any portion of the purchase price (as defined below) otherwise payable with respect to such loan. ([italics added]).

159. Defendants never advised Plaintiff that "the pooling and servicing agreement other similar servicing contract governing servicing of a mortgage loan prohibits [Defendants] from performing the Services for [Plaintiff's loan])". Defendants never advised Plaintiff that they had used "reasonable efforts to remove all prohibitions or impediments to [their] authority, and use[d] reasonable efforts to obtain all third party consents and waivers that are required, by contract or law, in order to effectuate [the] modification of [Plaintiff's] loan under the Program." Plaintiff has been wrongfully denied his entitlement to make application for, and to obtain, a loan modification under HAMP as he was led to believe he was applying for.

**PHH HAS FAILED TO IMPLEMENT A COMPREHENSIVE LOAN PROGRAM, AS IT HAD FRAUDULENTLY ASSERTED UNDER PENALTY OF PERJURY TO THE STATE OF CALIFORNIA PURSUANT TO ITS CIVIL CODE § 2923.53 EXEMPTION AFFIDAVIT.**

160. Defendant PHH has violated Civil Code §2923.53 by virtue of its failure to implement a comprehensive loan modification program to justify PHH's exemption from the requirements of Civil Code §2923.52.

161. Defendant PHH has represented that it was granted a final or temporary order of exemption from Civil Code §2923.53.

162. Defendant PHH has represented to the California Department of Corporations that they have implemented a comprehensive loan modification program, under penalty of perjury.

163. According to Civil Code §2923.53(a), this program "shall include all of the following features: (1) The loan modification program is intended to keep borrowers whose principal residences are homes located in California in those homes when the anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis. (2) The loan modification program targets a ratio of the borrower's housing-related debt to the borrower's gross income of 38 percent or less, on an aggregate basis in the program. (3) The loan modification program includes some combination of the following features: (A) An interest rate reduction, as needed, for a fixed term of at least five years. (B) An extension of the amortization period for the loan term, to no more than 40 years from the original date of the loan. (C) Deferral of some portion of the principal amount of the unpaid principal balance until maturity of the loan. (D) Reduction of the principal. (E) Compliance with a federally mandated loan modification program. (F) Other factors that the commissioner determines are appropriate. In determining those factors, the commissioner may consider efforts implemented in other jurisdictions that have resulted in a reduction in foreclosures. (4) When determining a loan modification solution for a borrower under the loan modification program, the servicer seeks to achieve long-term sustainability for the borrower"

164. Based on the targeted ratio of income to debt, Defendant PHH should have adjusted Plaintiff's monthly mortgage to a 38% of Plaintiff gross income in order to comply with the requirements of Civil Code §2923.53.

165. Defendant PHH represented to the Department of Corporations that it had a program that "targets a ratio of the borrower's housing-related debt to the borrower's gross income of 38 percent or less, on an aggregate basis." Plaintiff fits this description yet has not been provided the opportunity to take part in such program.

166. Consequently, Defendant PHH has violated Civil Code §2923.53. By virtue of the violation of Civil Code §2923.53, Defendant PHH has violated Civil Code §2924 and committed fraud by lying under penalty of perjury to the California State Government in its Section 2923.52 ) exemption affidavit, styled "California Declaration" as attached to the Notice of Trustee's Sale dated 05/09/11 as served on Plaintiff (see Exhibit E hereto: Notice of Trustee's Sale with attached "California Declaration" purportedly signed by James D. Scott, Assistant Secretary of PHH Mortgage Corporation on 8-4-2009).

167. The Defendants failure to comply with Civil Code §2924 greatly prejudiced the Plaintiff's rights of un-encumbering his property or refinancing his property due to Defendants' failure to properly notice Plaintiff of the foreclosure pending on his Property.

168. As a result of these wrongful acts and omissions, Plaintiff was not properly notified of the pending foreclosure process that was instituted in violation of Civil Code §§ 2924(b) and 2923.5.

169. As a result of the statutory violations, the proposed trustee's sale of the subject Property should be cancelled.

170. As a result of these wrongful acts and omissions, Plaintiff has been precluded from properly curing any default in his mortgage and also from all the rights and benefits that go along with a person's ability to own and reside in a home.

171. As a result of these wrongful acts and omissions, Plaintiff has been precluded from benefiting from the rights granted by Civil Code §§ 2924(b) and, 2923.5 and modifying his current loan to a principal amount and an interest rate which he can afford and would have allow him to stay in his home. Notwithstanding these violations by PHH, Defendants' willful and malicious conduct caused the pending foreclosure proceedings against Plaintiff's residence. Notwithstanding their violations, Defendants callously seek to evict Plaintiff from his home.

**FIRST CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT**

(AGAINST PHH MORTGAGE CORPORATION;
HSBC BANK USA, NATIONAL ASSOCIATION;
HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1;
NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
UNITED PACIFIC MORTGAGE; and LSI)

172. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

173. Plaintiff's Property suffered a fire on July 29, 2008. Thereafter, Plaintiff discovered and PHH affirmed by letter that Plaintiff's own hazard insurance had been cancelled (through the negligence of Plaintiff's insurance agency and never admitted nor corrected by same) (see Exhibit G hereto: PHH's letter dated August 22, 2008 to Plaintiff advising that PHH had been advised by

subject Property. All the Defendants HSBC BANK USA, NATIONAL ASSOCIATION; HSBC BANK USA, NATIONALASSOCIATION, AS TRUSTEE FOR PHH 2007-1; NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., UNITED PACIFIC MORTGAGE; and LSI, are in some part liable with PHH for such breach as they are colluding and conspiring with PHH in its breach of the contract and resulting consequences, including the threatened loss of Plaintiff to the Property and its enjoyment.

177. Pursuant to California Civil Code Section 1559, Plaintiff may enforce the provisions of the contract Deed of Trust. "A contract, made expressly for the benefit a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code §1559.

178. Plaintiff seeks damages according to proof and reserves his right to seek equitable remedies to prevent the sale of his Property.

**SECOND CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT – PLAINTIFF'S NOTE**

(AGAINST PHH)

179. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

180. Plaintiff and PHH have a contractual relationship for the servicing of the loan.

181. PHH is responsible for the mortgage loan servicing obligations under the Note.

182. The Note and Deed of Trust are industry standard form documents. Industry practice does not allow borrowers an opportunity to make changes to the Note or Deed of Trust. The Note and Deed of Trust are presented on a "take it or leave it" basis. Consistent with industry practice, Plaintiff was not provided an opportunity to make any changes to the Note or Deed of Trust and were offered them on a "take it or leave it" basis. Given the superior bargaining power of the industry and its lenders, the Note and Deed of Trust are contracts of adhesion.

183. Because the Note and Deed of Trust were made in California and concern property in California, the prohibition contained in California Civil Code Section 2954.4 is incorporated into the Note and Deed of Trust. PHH breached the terms of the Note by improperly charging late fees.

184. Plaintiff has been damaged as the result of PHH's breach of contract, including, but not limited to, incurring excessive late charges.

**THIRD CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES – PLAINTIFF'S NOTE**

(AGAINST PHH MORTGAGE CORPORATION;
HSBC BANK USA, NATIONAL ASSOCIATION;
HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1;
NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
UNITED PACIFIC MORTGAGE; and LSI)

185. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

186. The conduct of PHH, as set forth in the allegations in this complaint, constitutes unfair and/or fraudulent business practices under California Business & Professions Code section 17200, et seq.

187. PHH's conduct alleged herein is unfair within the meaning of California Business and Professions Code section 17200 et seq.

188. PHH's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers. PHH's conduct alleged herein is unfair because, among other reasons, PHH charged excessive late fees to Plaintiff.

189. PHH's conduct alleged herein is fraudulent within the meaning of California Business and Professions Code section 17200 et seq.

190. PHH's business practices, as alleged herein, are fraudulent because among other actions, they are likely to deceive consumers, including Plaintiff, into believing that the late charges were being calculated and assessed properly.

191. On behalf of the general public, Plaintiff requests that this court order that PHH be required to disgorge the profits it has have wrongfully obtained through the use of these unfair and/or fraudulent practices, provide restitution, and that an injunction issue to correct the wrongful business practices alleged in this complaint and to prevent PHH from engaging in the conduct alleged herein in the future. All the Defendants HSBC BANK USA, NATIONAL ASSOCIATION; HSBC BANK USA, NATIONALASSOCIATION, AS TRUSTEE FOR PHH 2007-1; NDEX

WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., UNITED PACIFIC MORTGAGE; and LSI, are in some part liable with PHH for its wrongful conduct as they are colluding and conspiring with PHH in the resulting consequences, including the threatened loss of Plaintiff to the Property and its enjoyment, and said Defendants should also be required to disgorge any profits wrongfully obtained.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

(AGAINST PHH MORTGAGE CORPORATION;
HSBC BANK USA, NATIONAL ASSOCIATION;
HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1;
NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
UNITED PACIFIC MORTGAGE; and LSI)

192. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

193. PHH actively participated in a scheme whereby it unlawfully and unfairly assessed excessive late fees on Plaintiff.

194. PHH knew and was aware of the unfair and/or deceptive acts and business practices.

195. Defendants concealed the true facts and circumstances from Plaintiff.

196. By wrongfully obtaining and assessing excessive late fees, PHH was unjustly enriched at the expense of Plaintiff.

197. PHH knew the benefit it was receiving as a result of its wrongful acts, and has enjoyed the benefit of its financial gains, to the detriment and the expense of Plaintiff.

198. Retention of the monies gained through its wrongful acts and practices would be inequitable considering the circumstances by which PHH obtained these monies.

199. The actions described in this complaint by PHH were done with a conscious disregard of Plaintiff's rights. These actions constitute conduct which is despicable behavior done with an intent to injure Plaintiff, such as to constitute oppression, fraud or malice under California Civil Code § 3294, entitling Plaintiff to punitive damages.

200. Restitution alone would have little or no deterrent effect on PHH, and without an award of exemplary damages, PHH is incentivized to pursue other malicious, oppressive and fraudulent schemes.

201. Plaintiff is entitled to and seeks restitution and punitive damages from PHH and an order disgorging all profits, benefits, and other compensation obtained by Defendants for their wrongful conduct. All the Defendants HSBC BANK USA, NATIONAL ASSOCIATION; HSBC BANK USA, NATIONALASSOCIATION, AS TRUSTEE FOR PHH 2007-1; NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., UNITED PACIFIC MORTGAGE; and LSI, are in some part liable with PHH for its wrongful conduct as they are colluding and conspiring with PHH in the resulting consequences, including the threatened loss of Plaintiff to the Property and its enjoyment, and said Defendants should be joined to PHH in its being required to make restitution and proportionally share in punitive exemplary damages according to each conspiring and colluding with PHH.

**FIFTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

(AGAINST PHH MORTGAGE CORPORATION;
HSBC BANK USA, NATIONAL ASSOCIATION;
HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1;
NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
UNITED PACIFIC MORTGAGE; and LSI)

202. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

203. An actual controversy has arisen between Plaintiff, and PHH as to the parties' respective rights and obligations discussed above. Specifically, Plaintiff contends that the acts and practices of PHH and co-conspiring Defendants HSBC BANK USA, NATIONAL ASSOCIATION; HSBC BANK USA, NATIONALASSOCIATION, AS TRUSTEE FOR PHH 2007-1; NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., UNITED PACIFIC MORTGAGE; and LSI as hereinabove alleged are unfair and/or fraudulent, in breach of contract, and PHH contends to the contrary.

204. Plaintiff requests that the court declare the acts and practices complained of herein to be unfair and/or fraudulent and in breach of contract.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF SECTION 1788.17 OF THE RFDCPA**

(AGAINST PHH MORTGAGE CORPORATION;
HSBC BANK USA, NATIONAL ASSOCIATION;
HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1;
NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
UNITED PACIFIC MORTGAGE; and LSI)

205. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

206. California Civil Code Section 1788.17 requires that PHH comply with the provision of 15 U.S.C. Section 1692, through their acts, even threatening to unlawfully foreclose upon the Property of Plaintiff, including but not limited to, the following:

(a) The Defendants violated California Civil Code Section 1788.17 by engaging in conduct, the natural consequence of which is to harass, oppress, and abuse persons in connection with the collection of the alleged debt.

(b) The Defendants violated California Civil Code Section 1788.17 by misrepresenting the status of the debt.

(c) The Defendants violated California Civil Code Section 1788.17 by using unfair or unconscionable means to collect or attempt to collect a debt.

(d) The Defendants violated California Civil Code Section 1788.17 by using deceptive means to collect or attempt to collect a debt from the Plaintiff.

207. The foregoing violations by Defendants result in violations of California Civil Code Section 1788.17.

The forgoing acts by Defendants were willful and knowing violations of the California Civil Code (FRDCPA), are sole and separate violations under California Civil Code Section 1788.30(b), and trigger multiple $1,000.00 penalties.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF DUE PROCESS**

**FAILURE TO PROMULGATE RULES REQUIRING**

**A RIGHT TO REVIEW OR APPEAL TO AN IMPARTIAL ARBITER**

(AGAINST ALL DEFENDANTS)

214. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

215. The Fifth Amendment to the United State Constitution commands the federal government: "*NO* person shall... be deprived of life, liberty, or property, without due process of law ... " HAMP is an entitlement program such that its benefits cannot be administered arbitrarily and without procedural due process.

216. Procedural due process requires meaningful notice of the specific reason why a person has been denied, and, in order to be meaningful, procedural due process further requires an opportunity to correct mistakes or appeal an adverse decision as well notice of such an opportunity. Government entities administering entitlement programs such as Defendants are constitutionally obligated to provide program regulations, guidelines, or rules which comport with procedural due process.

217. Pursuant to the Fifth Amendment, Defendants are required to have promulgated regulations that create a uniform process to provide homeowners an unbiased and uniform process to evaluate and reverse adverse decisions related to HAMP and undo adverse actions, and provide a written decision related to the appeal. Defendants failed to fulfill these requirements.

218. Plaintiff has incurred damages, and prays for remedies as outlined further in the section entitled "Prayer for Relief" enumerated below.

**NINTH CAUSE OF ACTION**

**VIOLATIONS OF FAIR CREDIT REPORTING ACT**

(AGAINST PHH)

219. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

220. At all times material, PHH qualified as a provider of information to the Credit Reporting Agencies, including but not limited to Experian, Equifax, and TransUnion, under the Federal Fair Credit Reporting Act.

221. PHH wrongfully, improperly, and illegally reported negative information as to the Plaintiff to one or more Credit Reporting Agencies, resulting in Plaintiff having negative information on his credit reports and the lowering of his FICO score.

222. The negative information included but was not limited to an excessive amount of debt into which Plaintiff was tricked and deceived into accepting.

223. Pursuant to 15 USC §1681(s)(2)(b), Plaintiff is entitled to maintain a private cause of action against PHH for an award of damages in an amount to be proven at the time of trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiff, including emotional distress and humiliation.

224. Plaintiff is entitled to recover damages from PHH for negligent noncompliance with the Fair Credit Reporting Act pursuant to 15 USC §1681(o).

225. Plaintiff is also entitled to an award of punitive damages against PHH for its willful noncompliance with the Fair Credit Reporting Act pursuant to 15 USC § 1681(n)(a)(2) in an amount to be proven at time of trial.

226. Plaintiff has incurred damages, and prays for remedies as outlined further in the section entitled "Prayer for Relief" enumerated below.

**<u>TENTH CAUSE OF ACTION</u>**

**DEFENDANTS' LACK STANDING IN ATTEMPTING TO CONDUCT A NON-JUDICIAL FORECLOSURE PURSUANT TO *CALIFORNIA COMM. CODE § 330*.**

(AGAINST PHH MORTGAGE CORPORATION; HSBC BANK USA, NATIONAL ASSOCIATION; HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHHI 2007-1; NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., UNITED PACIFIC MORTGAGE; and LSI)

227. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

228. A promissory note is personal property and the deed of trust securing a note is a mere incident of the debt it secures, with no separable ascertainable market value. *California Civil Code §§ 657, 663. Kirby v. Palos Verdes Escrow Co.*, (1986) 183 Cal. App. 3d 57, 62.

229. Any transfers of the notice and mortgage fundamentally flow back to the Note:

230. "The assignment of a mortgage without a transfer of the indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer" *Hyde v. Mangan* (1891) 88 Cal 319; *Johnson v. Razy* (1919) 181 Cal 342; *Bowman v. Sears* (1923) 63 Cal App 235; *Treat v. Burns* (1932) 216 Cal. 216,

231. "A mortgagee's purported assignment of the mortgage without an assignment of the debt which is secured is a legal nullity." *Kelley V. Upshaw* (1952) 39 Cal. 2d 179.

232. "A trust deed has no assignable quality independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect." *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543.

233. The Note is a negotiable instrument.

234. Transferring a Deed of Trust, by itself, does not allow enforcement of the instrument unless the Promissory Note is properly negotiated.

235. Where an instrument has been transferred, enforceability is determined based upon possession.

236. *California Commercial Code § 3301* limits a negotiable instrument's enforcement to the following: "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a non-holder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

237. PHH has been requested pursuant to Plaintiff's QWR to provide and has not provided a copy of the Note and has failed to provide evidence that they are in possession of the "Instrument" (Original Note).

238. PHH has not demonstrated that they are non-holders in possession of the instrument who had rights of the holder.

239. PHH has failed to show they are entitled to enforce the instrument pursuant to California Commercial Code § 3309 or subdivision (d) of Section 3418.

240. PHH has no enforceable rights under *California Commercial Code 3301(a)* to enforce the negotiable instrument.

241. Since there was no right to enforce the negotiable instrument, the Notice of Default provisions of *California Civil Code § 2924* and Notice of Sale provisions of *California Civil Code § 2924f* were likewise never complied with, and there was no subsequent incidental right to enforce any deed of trust and proceed with a non-judicial foreclosure, as identified herein.

242. As a direct result of PHH's acts and those of co-conspiring Defendants HSBC BANK USA, NATIONAL ASSOCIATION; HSBC BANK USA, NATIONALASSOCIATION, AS TRUSTEE FOR PHH 2007-1; NDEX WEST, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., UNITED PACIFIC MORTGAGE; and LSI, Plaintiff has incurred actual damages consisting of mental and emotional distress, nervousness, grief, embarrassment, loss of sleep, anxiety, worry, mortification, shock, humiliation, indignity, pain and suffering, and other injuries.

243. Plaintiff has incurred damages, and prays for remedies as outlined further in the Prayer For Relief enumerated below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

Plaintiff asks this Court to:

A. Declare Defendants' conduct is a violation of procedural due process;

B. Enjoin Defendants and their agents, nominees, attorneys, employees, representatives or anyone acting in concert or participation with Defendants from conducting a nonjudicial

foreclosure sale of Plaintiff's home, or taking any further steps in proceeding with nonjudicial foreclosure of the deed of trust securing the loan, unless or until Defendants prove they are:

1. Promulgating regulations, guidelines, or rules that require that borrowers, such as Plaintiff, be given a reasonable opportunity to be heard concerning eligibility and qualifications for a loan modification under HAMP, and concerning the right of mortgage loan servicers to deny borrowers, such as Plaintiff, access to HAMP; and

2. Promulgating regulations, guidelines, or rules that require mortgage loan servicers, such as PHH, to notify, in writing, that a homeowner, such as Plaintiff, has been [illegible] access to participate in HAMP and the loan modification or loss mitigation programs offered by the servicer; and

3. Promulgating regulations, guidelines, or rules that require mortgage loan servicers, such as PHH, provide a written decision stating the reason for denial, and s[illegible] proper application of the "loss mitigation waterfall;" and

4. Promulgating regulations, guidelines, or rules that require notice of an opportunity for the homeowner, such as Plaintiff, to appeal or provide additional informat[illegible] neutral decision-maker; and

5. Promulgating regulations, guidelines, or rules that require the disclosure of the factors and specific formula used to determine a "positive" or "negative" result by the [illegible] present value calculator;

6. Promulgating regulations, guidelines, or rules that provide a reas[illegible] "opportunity for a homeowner, such as Plaintiff to appeal to an unbiased decision-maker; and

7. Afford Plaintiff all of the foregoing procedural due process.

C. Award all costs and attorneys' fees; and

D. Such further relief, including equitable relief, as the Court deemed appropriate.

E. Under all alternatives, Plaintiff prays:

1. That this Court grant judgment in favor of Plaintiff against all Defendants;

2. For all damages and remedies Plaintiff is entitled to recover;

3. For all damages and remedies Plaintiff is entitled to recover;

4. For judgment that Plaintiff is entitled to compensation of the full value of the subject Property;

5. For compensatory damages according to proof, including lost credit, lost earnings, medical expenses, emotional distress, humiliation, mental anguish, and compensatory damages;

6. For general damages according to proof;

7. For special damages according to proof;

8. For punitive damages according to equity;

9. For interest on damages according to proof;

10. For prejudgment interest on such damages as provided by law;

11. For attorney fees incurred by Plaintiff;

12. For costs of suit incurred by Plaintiff; and

13. For such further relief as the court deems proper.

Dated: August 15, 2011

MARSHALL DENNIS SILVERS
Plaintiff In Pro Per

HSBC

June 20, 2011

Marshall Silvers
5442 Crebs Avenue
Tarzana, CA 91356

Dear Marshall Silvers:

Your communication addressed to the Office of the Comptroller of the Currency has been received in the Executive Office of HSBC Bank USA, N.A.

Please be aware that HSBC Bank U.S.A. acts as a trustee for certain loan securitization trusts in connection with the issuance of mortgage backed securities. As trustee, the bank has only a nominal role with the respect to the properties owned by the trust. Under the agreements that establish the trusts, other companies are designated as the servicers of the loans and those servicers handle matters such as mortgage foreclosures, loan modifications, evictions and sales of foreclosed trust properties.

We appreciate the opportunity to respond to your inquiry. Should you require any additional information, please contact your loan servicer.

Yours sincerely,

LaToyia Malcolm
Executive Office

cc: L. Fontenot, Office of the Comptroller of the Currency – File# 01610012

HAS NOT SENT ME MY QUALIFIED WRITTEN REQUEST!

HSBC Bank USA, National Association
Executive Office, P.O. Box 3448, Buffalo, NY 14240
Tel: 1 (877) 472-2005 Fax: (716) 841-2034

Exh. A. (P. 54)



EXHIBIT A

Recording requested by:
SERVICELINK, A DIVISION OF CHICAGO TITLE INSURANCE COMPANY

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

*ASSG20100028
ASSG20100028700348

CERTIFIED TO BE A TRUE AND EXACT COPY OF THE ORIGINAL DOCUMENT RECORDED: 5/4/2010
AS INSTRUMENT NUMBER: 2010-0602500
AS BOOK:
AS PAGE:
BY SERVICELINK

Space above this line for Recorder's use only

Trustee Sale No. : 20100028700348 Title Order No.: 412385

# ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1 all beneficial interest under that certain Deed of Trust dated 10/16/2006, executed by MARSHALL D. SILVERS, as Trust or to LSI, Trustee, and Recorded on 10/24/2006 as Instrument No. 06 2354885 of Official Records in the County Recorder's office of LOS ANGELES County, California. Describing land therein: AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated April 23 2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR UNITED PACIFIC MORTGAGE

[signature]

Mark J. Hankins, Vice President PHH Mortgage Corp as authorized agent

State of New Jersey )
County of Burlington )

Before me Craig Matthew Clark, the undersigned Notary Public, on this day personally appeared Mark J. Hankins, who is the Authorized Agent of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR UNITED PACIFIC MORTGAGE, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 23 day of April, 2010.

My Commission Expires:
CRAIG MATTHEW CLARK
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 10/15/2013

[signature]
Notary Public Signature

Printed Name of Notary Public

CAASGNDOT.rpt - (01/08/2010) / Ver-15

Page 1 of 1

Exh. B. (P.50)

This page is part of your document - DO NOT DISCARD

06 2354885

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
10/24/06 AT 08:00am

TITLE(S) :

LEAD SHEET

FEE

| FEE $61.– M |
|---|
| DAF $ 2.– |
| C-20 |

19

D.T.T.

CODE
20

CODE
19

CODE
9

NOTIFICATION SENT-$4

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

Exh. C P. 57



EXHIBIT A

2

Recording Requested By:
UNITED PACIFIC MORTGAGE
Lender Service - PLD
Fidelity National Financial

And After Recording Return To:
UNITED PACIFIC MORTGAGE
21600 OXNARD STREET, #1900
WOODLAND HILLS, CALIFORNIA 91367
Loan Number: 1710043417

06 2354885

2745854
2161-006015

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN: 100134917100434176

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 16, 2006 , together with all Riders to this document.

(B) "Borrower" is MARSHALL D. SILVERS, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.

(C) "Lender" is UNITED PACIFIC MORTGAGE

Lender is a GENERAL PARTNERSHIP organized and existing under the laws of CALIFORNIA. Lender's address is 21600 OXNARD STREET, #1900, WOODLAND HILLS, CALIFORNIA 91367 .

(D) "Trustee" is LSI
2550 REDHILL AVE., SANTA ANA, CALIFORNIA 92705 .

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated OCTOBER 16, 2006 . The Note states that Borrower owes Lender FIVE HUNDRED SEVENTY-TWO THOUSAND AND 00/100 Dollars (U.S. $ 572,000.00 ) plus interest.

Borrower Initials: ______ ______ ______ ______ ______ ______

10/24/06

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of LOS ANGELES [Name of Recording Jurisdiction]:

LOT 41 OF TRACT NO. 16491, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 377, PAGE(S) 1 TO 3 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
A.P.N.: 2161-006-015

See Exhibit "One"

which currently has the address of 5442 CREBS AVENUE, (TARZANA AREA) [Street]

LOS ANGELES [City], California 91356 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

10/24/06

Borrower Initials: ______ ______ ______ ______ ______ ______

6

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: ______ ______ ______ ______ ______ ______ ______



10/24/06

Ca3005.mzd

06 2354885

Exh. C (P. 62)



EXHIBIT A

8

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Borrower Initials: ________ ________ ________ ________ ________



10/24/06

Ca3005 mmd

06 2354885

Exh C (P. 64)



EXHIBIT A

9

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

Borrower Initials: ______ ______ ______ ______ ______ ______

11

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Borrower Initials: ______ ______ ______ ______ ______ ______ ______



10/24/06

Ca3005.mzd

06 2354885

Exh.C. (P. 67)



EXHIBIT A

12

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

Borrower Initials: ______ ______ ______ ______ ______ ______ ______



10/24/06

Ca3005.mmd

06 2354885

Exh. C (168)



EXHIBIT A

14

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

MARSHALL D. SILVERS (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

Witness: _______________

Witness: _______________

10/24/06



06 2354885

Exh. A. (P. 70)



EXHIBIT A

State of California )
) ss.
County of LOS ANGELES )

On 10/13/06 before me, Hyung Bob Lee, notary public

personally appeared MARSHALL D. SILVERS

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

HYUNG BOB LEE
Commission # 1577404
Notary Public - California
Los Angeles County
My Comm. Expires May 9, 2009

NOTARY SEAL

NOTARY SIGNATURE

Hyung Bob Lee
(Typed Name of Notary)

10/24/06



06 2354885

Exh. C. (P.71)

17

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D) **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.250 %.

(E) **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) **Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) **Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

Borrower Initials: ______ ______ ______ ______ ______ ______



10/24/06

U3153 rid

06 2354885

Exh. C, p. 73



EXHIBIT A

19

continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

(Seal) MARSHALL D. SILVERS -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower



10/24/06

U63153 rld

06 2354885

Exh. C. (P. 75)

Order No. 52/45854 - 2745854-53 - A

## EXHIBIT "ONE"

20

Lot 41 of Tract No. 16491, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 377, Page(s) 1 to 3 inclusive of Maps, in the office of the County Recorder of said county.

Assessor's Parcel No: 2161-006-015

10/24/06

06 2354885

(Rev. 11/17/04)

Exh. C (DT6)



EXHIBIT A

Recording requested by:
SERVICELINK, A DIVISION OF CHICAGO TITLE INSURANCE COMPANY

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

SUB20100028700348

CERTIFIED TO BE A TRUE AND EXACT COPY OF THE ORIGINAL DOCUMENT RECORDED: 5-25-10
AS INSTRUMENT NUMBER: 20100707740
AS BOOK:
AS PAGE:
BY SERVICELINK

Space above this line for Recorder's use only

Trustee Sale No. : 20100028700348 Title Order No.: 412385

# SUBSTITUTION OF TRUSTEE

WHEREAS, MARSHALL D. SILVERS was the original Trustor, LSI was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") was the original Beneficiary Recorded on 10/24/2006 as Instrument No. 06 2354885 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, NDEx West, L.L.C., WHOSE ADDRESS IS: 15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED: May 11 2010

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1 By PHH Mortgage Corporation as Attorney in Fact

Marc J. Hinkle Vice President

State of New Jersey }
County of Burlington }

On May 11 2010 before me, Craig Matthew Clark, Notary Public, personally appeared Marc J. Hinkle who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: ______________ (Seal)

My commission expires: CRAIG MATTHEW CLARK NOTARY PUBLIC OF NEW JERSEY Commission Expires 10/15/2013

SEE ATTACHED AFFIDAVIT

FCUS_SubstituteOfTrustee_M.rpt - 02/24/2010 - Ver 05

Page 1 of 1

Exh. D. (P. 76)

CALIFORNIA DECLARATION

I, James D. Scott, of PHH Mortgage Corporation, declares under penalty of perjury, under the laws of the State of California, that the following is true and correct:

The Mortgage Loan Servicer ___X___has or _____ has not obtained from the Commissioner of Corporation a final or temporary order of exemption pursuant to California Civil code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

AND/OR

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 ____ does or _X_ does not apply pursuant to Section 2923.52 or 2923.55.

8-4-2009
DATE AND PLACE

Name of Signor

Assistant Secretary
Title and/or Position

Exh. B (p 78)



EXHIBIT A

D-1

Siwes 0039571088

MIN: 100134917100434176

Loan Number: 1710043417

# INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE

(One-Year LIBOR Index (As Published In *The Wall Street Journal*)
Rate Caps - 10 Year Interest Only Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| OCTOBER 16, 2006 | WOODLAND HILLS | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

5442 CREBS AVENUE, (TARZANA AREA), LOS ANGELES, CALIFORNIA 91356
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 572,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is UNITED PACIFIC MORTGAGE, A GENERAL PARTNERSHIP .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment on the 1st day of every month, beginning on DECEMBER 1 2006 . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on NOVEMBER 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 21600 OXNARD STREET, #1900, WOODLAND HILLS, CALIFORNIA 91367 or at a different place if required by the Note Holder.

Borrower Initials: ______ ______ ______ ______ ______ ______



Exh. F

P. 79

D-2

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,455.83 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of NOVEMBER, 2011, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.250 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Borrower Initials: ______ ______ ______ ______ ______ ______

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10 YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3536 06/05 (rev. 08/06) Page 2 of 6

DocMagic eForms 800-649-1362
www.docmagic.com

Exh. F.

P. 80



EXHIBIT A

D-

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue paymentof interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Borrower Initials: ________ ________ ________ ________ ________ ________



exh. F.

P.8T

D-6

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower Initials: NVS ______ ______ ______ ______ ______



Exh. F.

P. 83



EXHIBIT A

Dab

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) MARSHALL D. SILVERS -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |

*[Sign Original Only]*



Exh. F.

P. 84

PAY TO THE ORDER OF

WITHOUT RECOURSE

X

UNITED PACIFIC MORTGAGE,
A GENERAL PARTNERSHIP
MELANIE TYLER, OFFICER

Exh. F.

P.85

[redacted]

## ALLONGE TO NOTE

PROPERTY ADDRESS: 5442 CREBS AVENUE, (TARZANA AREA), LOS ANGELES, CALIFORNIA 91356

PRINCIPAL BALANCE: 572,000.00

ALLONGE TO NOTE DATED: OCTOBER 16, 2006

IN FAVOR OF UNITED PACIFIC MORTGAGE, A GENERAL PARTNERSHIP

AND EXECUTED BY
MARSHALL D. SILVERS

PAY TO THE ORDER OF
PHH MORTGAGE CORPORATION
4001 LEADENHALL ROAD, MT. LAUREL, NJ 08054

WITHOUT RECOURSE
UNITED PACIFIC MORTGAGE, A GENERAL PARTNERSHIP

BY: [signature]

TITLE: MELANIE TYLER, OFFICER

Exh F.

P. 86

ALLONGE TO NOTE
10/14/05

DocMagic eForms 800-649-1362
www.docmagic.com

## SIGNATURE AFFIDAVIT AND AKA STATEMENT

### SIGNATURE AFFIDAVIT

I, MARSHALL D. SILVERS
certify that this is my true and correct signature:

MARSHALL D. SILVERS
Borrower

Sample Signature

### AKA STATEMENT

I, MARSHALL D. SILVERS
further certify that I am also known as:

| Name Variation (Print) | Sample Signature (Variation) |
|---|---|
| MARSHALL SILVERS | |
| MARSHALL DENNY SILVERS | |
| DENNY SILVERS | |
| DENNY MARSHALL SILVERS | |
| MARSHALL SILVESTER | |
| | |
| | |

State of CALIFORNIA
County of LOS ANGELES

Subscribed and sworn to (or affirmed) before me on this 18th day of October 2007, by
MARSHALL D. SILVERS

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

HYUNG BOK LEE
Commission # 1577404
Notary Public - California
Los Angeles County
My Comm. Expires May 9, 2009

(seal)

Signature

SIGNATURE AFFIDAVIT AND AKA STATEMENT
08/08/05

DocMagic eForms 800-649-1362
www.docmagic.com

Exh. F

P.87

PHH Mortgage Sei :s

PHH

P.O. Box 5954
Springfield OH 45501

Tel 888-882-1855
Fax 937-525-4210

August 22, 2008

Loan Number: 0039571088
Property Address:
5442 Crebs Avenue
Los Angeles CA 91356

Marshall D Silvers
(tarzana Area)
5442 Crebs Avenue
Tarzana CA 91356

Dear Customer(s):

We have been advised by Farmers Insurance that your hazard insurance was canceled effective 07/20/08.

According to your Mortgage/Deed of Trust, you are required to maintain homeowner's insurance on the property.

Please contact your Agent/Insurance Company to provide us with a reinstatement notice or a copy of your new policy.

If you have any additional questions, please contact us at the phone number referenced above or visit our website at www.mycoverageinfo.com by entering your PIN CM954 to update your records.

Sincerely,

Mortgage Service Center

IN020 4AX

Exh. G. P. 88

*Log in to MortgageQuestions.com — your servicing website connection.*

PHH
PHH Mortgage Corporation
P O BOX 5954
SPRINGFIELD, OH 45501-5954

Tel: 1-888-882-1855
Fax: 937-525-4210
MyCoverageInfo.com

08/28/2008

73

MARSHALL D SILVERS
5442 CREBS AVENUE
TARZANA, CA 91356-3306

SUBJECT: Property Location: 5442 CREBS AVENUE
LOS ANGELES, CA 91356

Loan No. 0039571088

Dear Customer:

During a recent audit of our files, it came to our attention we did not have current hazard insurance information for your account.

We request your assistance in this matter. Under the terms of your mortgage agreement, we must have current insurance information at all times. Please contact your agent or company to verify your policy includes a Mortgagee Clause for:

**PHH MORTGAGE CORPORATION**
**Attn: Loan Number: 0039571088**
**Its Successors and/or Assigns As Their Interest May Appear**
**P O BOX 5954**
**SPRINGFIELD, OH 45501-5954**

In addition, please verify that your agent has the above loan number and forward your insurance information to the address shown above or your agent may fax to the Insurance Department at 937-525-4210. You may also update your hazard coverage directly to our Web site at MyCoverageInfo.com by entering your PIN CM954.

It is extremely important that we receive this information within 15 days from receipt of this letter. To insure prompt service, please include your loan number on all correspondence mailed or faxed to our office.

Thank you for taking the time to help us resolve this matter. We appreciate the opportunity to serve you and look forward to meeting your mortgage needs.

Sincerely,

Mortgage Service Center

Exh. H. P. 89

Log in to MortgageQuestions.com---your servicing website connection.



EXHIBIT A

UNITED PACIFIC MORTGAGE®

November 16, 2006

UNIT MARGARITA
1612 CALIFORNIA
7:00 o'clock

MARSHALL SILVERS
5442 CREBS AVENUE
LOS ANGELES, CA 91356

Re: Notice of Servicing Transfer Rights
UPM Loan Number: 1710043417

Dear MARSHALL SILVERS

You are hereby notified that the servicing of your mortgage loan will be transferred from UNITED PACIFIC MORTGAGE, effective 11/13/2006 to PHH MORTGAGE.

The information for PHH MORTGAGE is as follows:

**For Payments:**

PHH MORTGAGE
ATTN; MORTGAGE SERVICE CENTER
DEPARTMENT 7321
LOS ANGELES, CA 90088

0039571088 SEND CHK OR ON PHONE MORTGAGE QUESTIONS.COM

Customer Service: 1-800-257-0460
Loan Number: 0039571088

UNITED PACIFIC MORTGAGE will stop accepting and PHH MORTGAGE will start accepting your payments effective 12/1/2006.

There are no payments due to UNITED PACIFIC MORTGAGE. Your 12/1/2006 payment will be due to PHH MORTGAGE.

15 ON LINE — AS OF 15TH 1-14

If any payments are received after the transfer date, we will forward them to the above for processing. Should you have more than one account with us, please refer to the UPM Loan Number referenced above for the correct account being transferred.

Within the next two weeks, you should receive instructions from the new servicer regarding payments on your loan and other pertinent information. The servicing transfer of mortgage loans does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

MORTGAGE SERVICE CTR
DEPT 7321
LOS ANGELES CA. 90088

MAIL PAYMENT
HEATHER
-7321
$3488 83



EXHIBIT A

Monday, May 23, 2011

VIA FAX: 972-661-7800 and VIA CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Shannon E. Coleman, General Counsel
NDEx West, L.L.C.
Re: Trustee Sale No. 20100028700348/Title Order No. 412385
15000 Surveyor Boulevard, Suite 500
Addison, TX 75001-9013

re: Property: 5442 Crebs Avenue, Tarzana, CA 91356
Loan Number: 0039571088

Dear Shannon:

I am in receipt of your letter dated May 17, 2011 and the documents you enclosed. Thank you for the documents, but you have failed to address 1) my question as to "information" and 2) my contention that NDEx West, LLC has no right to foreclose. Copies of the documents you provided neither prove the validity of the debt nor the alleged amount, but they do show that MERS is not the owner of the underlying note: United Pacific Mortgage, a General Partnership is. You know that MERS is not the owner of the underlying note of my mortgage and therefore cannot transfer the note, the beneficial interest in the deed of trust, or foreclose on the property secured by the deed. You know this. You are a lawyer. This fact is affirmed by the USBC Eastern District citing cases of: In Re Vargas, California Bankruptcy Court; Landmark v. Kesler, Kansas decision as to lack of authority of MERS; LaSalle Bank v. Lamy, a New York case; and In Re Foreclosure Cases, the "Boyko" decision from Ohio Federal Court. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is VOID under California Law. But you know this. You are a lawyer. Under California law, to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee. Bear v. Golden Plan of California, Inc., 829 F.2d 705, 709 (9th Cir. 1986). Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance, Cal. Civ. Code §3440, or as unperfected, Cal. Com. Code §§9313-9314. See ROGER BERNHARDT, CALIFORNIA MORTGAGES AND DEEDS OF TRUSTS, AND FORECLOSURE LITIGATION §1.26 (4th ed. 2009). The note here specifically identifies United Pacific Mortgage as the party to whom it was payable, and the note therefore cannot be transferred unless the note is endorsed. See Cal. Com. Code §§3109, 3201, 3203, 3204. Where is evidence that United Pacific Mortgage ever endorsed or transferred or sold the note? MERS has no legal authority to stand in the shoes of United Pacific Mortgage. The transfer of an interest in the deed of trust alone is void. MERS acted only as a "nominee" for United Pacific Mortgage under the Deed of Trust. You know that the promissory note and the Deed of Trust are inseparable. "The note and the mortgage are inseparable; the former as essential, the later as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 271, 274 (1872); accord Henley v. Hotaling, 41 Cal. 22, 28 (1871); Seidell v. Tuxedo Land Co.,

Exh. J. (P. 91)

Shannon E. Coleman, General Counsel
NDEx West, L.L.C.
May 23, 2011
Page 3

due to these parties' wrongful actions. I have made a "qualified written request" under the Federal Servicer Act to PHH (see copy of letter dated May 6, 2011 to PHH attached with April 21, 2011 letter to PHH/HSBC's attorneys attached thereto) in order to aid in assessing my damages to date and am awaiting receipt of same. You will see that you/NDEx received a copy of the April 21, 2011 letter previously.

I demand that you cancel the foreclosure sale presently set for May 31, 2011 and refer this matter back to these parties as requested. TIME IS OF THE ESSENCE and damages continue to accrue. Your failure to meet my demand will be viewed as a conspiratorial act with these parties to take my property without lawful right and with concomitant liability.

I await your reply forthwith. Thank you.

Sincerely,

[signature]

MARSHALL DENNIS SILVERS
Telephone (818) 447-6604

cc: Jerolyn Waddles, Agent – VIA FAX 856-917-2848 and CERTIFIED MAIL-RETURN RECEIPT REQUESTED
PHH Mortgage-Mortgage Questionscom
Homeowners Assistance Team-Loss Mitigation
2001 Bishops Gate Boulevard
Mailstop SV-21
Mt. Laurel, New Jersey 08051

Exh. J. (P. 93)



EXHIBIT A

PROOF OF SERVICE BY MAILING

I am over the age of 18 and not a party to the within action. I am employed by the Office of United States Attorney, Central District of California. My business address is 300 North Los Angeles Street, Suite 7516, Los Angeles, California 90012.

On April 5, 2012, I served NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT BY FEDERAL DEFNEDANTS on each person or entity named below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices. I am readily familiar with the practice of this office for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

Date of mailing: April 5, 2012. Place of mailing: LOS ANGELES, CALIFORNIA. **Person(s) and/or Entity(ies) to Whom mailed:**

Marshall Dennis Silvers, Pro se
5442 Crebs Avenue
Tarzana, CA 91356

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on: April 5, 2012 at Los Angeles, California.

[signature]
Olivia Murillo

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MARSHALL DENNIS SILVERS, an individual

**DEFENDANTS**
SEE ATTACHED

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Attorneys (If Known)
ANDRÉ BIROTTE JR., U.S. Attorney
LEON W. WEIDMAN, AUSA, Chief, Civil Division
RUSSELL W. CHITTENDEN, AUSA (213) 894-2444
300 N. Los Angeles Street, Suite 7516, Los Angeles CA 90012

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding ☑ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $**__________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sections 1442

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☑ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus-Alien Detainee
- ☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/ Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

CV12-02986

**FOR OFFICE USE ONLY:** Case Number: __________

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): ____________

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): ____________

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 4/5/12

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
RUSSELL W. CHITTENDEN
Assistant United States Attorney
California State Bar No. 112613
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2444
Facsimile: (213) 894-7819
Email: russell.chittenden@usdoj.gov

Attorneys for Federal Defendants
Timothy F. Geithner, United States
Secretary of the Treasury and
The Federal Housing Finance Agency

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MARSHALL DENNIS SILVERS, an individual,

Plaintiff,

v.

HSBC BANK USA, NATIONAL ASSOCIATION, a national bank chartered by the Office of the Comptroller of the Currency and a member of the Federal Reserve System and the Federal Deposit Corporation; HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR PHH 2007-1, a securitized trust connected with the issuance of mortgage backed securities; PHH MORTGAGE CORPORATION, corporation licensed by the California Department of Corporations under the California Residential Mortgage Lending Act, individually and as attorney-in-fact for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH 2007-1; NDEX WEST, L.L.C., a limited liability corporation doing business in the State of California; MORTGAGE

NO.

<u>NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT BY FEDERAL DEFENDANTS</u>

[28 U.S.C. § 1442]

ELECTRONIC REGISTRATION SYSTEMS, INC., A Delaware corporation, individually and as nominee for UNITED PACIFIC MORTGAGE, a California General Partnership; UNITED PACIFIC MORTGAGE, a California General Partnership; LSI, an unknown entity, identified as Trustee under the Deed of Trust recorded in Official Records of the Los Angeles County Recorder's Office as Document No. 06-2354885; TIMOTHY F. GEITHNER, as United States Secretary of the Treasury; THE FEDERAL HOUSING FINANCE AGENCY, as conservator for the Federal National Mortgage Association; and DOES 1 through 50, inclusive,

Defendants.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

**CV12- 2986 PA (JEMx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.